AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
*December 17, 2021*
Nathan Ochsner, Clerk of Court

| | |
|---|---|
| United States of America<br>v.<br>In the Matter of the Extradition<br>of BOCIOG DUMITRU,<br>also known as ("a/k/a") SANDU SAYCO,<br>aka BOCIOG SCARLAT<br>*Defendant(s)* | Case No.<br>**4:21-mj-2673** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 15, 2021__ in the county of __Cameron__ in the __SOUTHERN__ District of __TEXAS__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 3184 | Being a fugitive from France which has sought his provisional arrest in view of extradition on the charges of Kidnapping and Theft with Violence, pursuant to the treaty of extradition between the United States and France, the Instrument as contemplated by Article 3, paragraph 2, of the Agreement on Extradition Between the United States of America and the European Union signed 25 June 2003, and Title 18 U.S.C., Section 3184 |

This criminal complaint is based on these facts:

See affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jay Hileman, Assistant U.S. Attorney
*Printed name and title*

Sworn to before me telephonically

Date: __12/17/2021__

_____
Frances H. Stacy
United States Magistrate Judge

City and state: __Houston, TX__

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| IN THE MATTER OF )<br>)<br>THE EXTRADITION OF )<br>)<br>BOCIOG DUMITRU, )<br>also known as ("a/k/a") )<br>SANDU SAYCO, aka )<br>BOCIOG SCARLAT ) | **4:21-mj-2673** |

**COMPLAINT FOR PROVISIONAL ARREST
WITH A VIEW TOWARDS EXTRADITION
(18 U.S.C. § 3184)**

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter, I represent the United States in fulfilling its treaty obligation to France.

2. There is an extradition treaty in force between the United States and France. Extradition Treaty Between the United States of America and France, with Agreed Minute, U.S.-Fr., Apr. 23, 1996, S. TREATY DOC. NO. 105-13 (1997), *as amended by* the Instrument as contemplated by Article 3, paragraph 2, of the Agreement on Extradition Between the United States of America and the European Union signed 25 June 2003, as to the application of the Extradition Treaty Between the United States of America and France signed 23 April 1996, U.S.-Fr., Sept. 30, 2004, S. TREATY DOC. NO. 109-14 (2006) (collectively, the "Treaty").

3. The Treaty provides in Article 13 for the provisional arrest and detention of alleged fugitives pending the submission of a formal request for extradition and supporting documents.

4. In accordance with Article 13 of the Treaty, the Government of France has asked the United States for the provisional arrest of BOCIOG DUMITRU, also known as SANDU

SAYCO, also known as BOCIOG SCARLAT (hereinafter "DUMITRU" or the "fugitive") with a view towards his extradition.

5.      According to the information provided by the Government of France, DUMITRU was tried and convicted of kidnapping, in violation of Articles 224-1 paras. 1 and 3, 224-9, and 224-11, of the French Penal Code; and theft with violence, in violation of Articles 311-1, 311-4, 311-5, 311-11, 311-14, and 311-15 of the same Code.

6.      These offenses were committed within the jurisdiction of France. On June 16, 2021, the President of the Judicial Tribunal of Grasse, France, Christian Legay, issued an arrest warrant for DUMITRU, on the basis of the following facts:

   a. On May 24, 2018, an SFR mobile phone store in Grasse, France, suffered a robbery. At closing time, around 7:15 p.m., store employee Julien Dorlhac heard a knock at the store's service entrance. Thinking it was a client trying to enter, Mr. Dorlhac opened the door and a man violently pushed him back into the store, and was followed inside the store by two other men. One of the men was wearing an earpiece, and the other was wearing a straw hat. The latter asked, in an aggressive voice, where they kept the phones.

   b. After Mr. Dorlhac unlocked the case containing the phones, the three men took possession of the phones on the shelves and then the man with the earpiece forced Mr. Dorlhac, together with Cassandra Winkel, another employee present in the store, into a storeroom where he then locked them in. Using a phone and a SIM card he found in the closet, Mr. Dorlhac was able to call for help, which arrived at approximately 8:30 p.m.

   c. A review of the missing merchandise revealed that approximately 40 phones and 117 accessories had been taken, at a loss of approximately 29,100 Euros, including nearly 500 Euros stolen from the register.

d. Investigators located surveillance video from a bakery across the street, which permitted investigators to identify that the three individuals who entered the SFR store gathered at the bakery at approximately 7:05 p.m., sat outside, consumed together 3 cans of Coca-Cola and were looking in the direction of the SFR store. Viewing extracts from the surveillance video, Mr. Dorlhac recognized two of the three individuals at the bakery as those who entered the SFR store.

e. Investigators recovered one of the cans of Coca-Cola from the area where the three individuals had surveilled the SFR store. Analysis of a DNA profile recovered from the can matched a profile in France's National DNA Database (FNAEG) associated with DUMITRU.

f. On November 15, 2019, DUMITRU was detained at Calais, in northern France, after arriving from Great Britain, and was thereafter transferred to Grasse where he was questioned. Although DUMITRU first denied being in France in 2018, he later admitted to entering the SFR store and stealing telephones.

g. After remaining in detention for a period of time, DUMITRU was released on conditions, which included regular reporting obligation and the payment of bail. Because DUMITRU never reported and did not pay his bail, an arrest warrant was issued on March 16, 2021, and a European arrest warrant on March 17, 2021.  DUMITRU was not found, however. Moreover, after the close of the investigation, the investigating judge bound the matter over for trial before the correctional court of Grasse.  Efforts were made in September and October 2020 to serve DUMITRU with notice of his trial date, but he was not found. Accordingly, DUMITRU was tried, found guilty, and sentenced to 4 years' imprisonment on March 16, 2021. He did not appear at trial, nor was he represented by counsel.

7. DUMITRU may be found within the jurisdiction of this Court in the custody of the Bureau if Immigrations and Customs Enforcement (ICE) at the Post Isabel Detention Center in Los Fresnos, Cameron County, Texas.

8. The Government of France has represented that it will submit a formal request for extradition supported by the documents specified in the Treaty, within the time required under the Treaty.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the United States and France.

_____
JAY HILEMAN
Assistant United States Attorney

Sworn to before me and subscribed to me by telephone on this 17th day of December , 2021, at Houston, TX , and I find probable cause.

Frances H. Stacy
United States Magistrate Judge